# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | | Case No. 3:08CV007 |
| Plaintiff-Respondent, | : | 3:03CR0161 |
| vs. | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Sharon L. Ovington |
| LAWRENCE W. LLYOD, | : | |
| Defendant-Petitioner. | : | |

## REPORT AND RECOMMENDATIONS[1]

Petitioner, a federal prisoner, brings this motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. # 60). The United States has filed an answer opposing Petitioner's motion (Doc. # 68) and Petitioner has filed a Reply (Doc. # 69).

Petitioner pleads the following grounds for relief:

ARGUMENT I:    THE FALSIFIED CRIMINAL COMPLAINT

ARGUMENT II:   FBI AGENT ROBERT BUZZARD'S GRAND JURY PERJURY

ARGUMENT III:  DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE WITHDREW THE SUPPRESSION MOTION

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

ARGUMENT IV:   DEFECTIVE REASONABLE DOUBT INSTRUCTIONS RELATING TO THE INSURED STATUS OF THE BANK

ARGUMENT V:   VIOLATION OF TITLE 28 U.S.C. §1691

GROUND FIVE:   Defense counsel provided Constitutionally Ineffective Assistance of Counsel when they did not recognize and argue a obvious Speedy Trial Act violation. See Attachment: The Petitioner did not raise this issue on direct appeal because defense counsel at trial was the same defense counsel on direct appeal.

GROUND SIX:   Defense Counsel provided Constitutionally Ineffective Assistance of Counsel when they did not recognize the invalidity of the criminal complaint and arrest warrant for violations of 28 U.S.C. 1691. Seal and teste of process.

## I.   PROCEDURAL HISTORY

Proceedings against Petitioner began by a Criminal Complaint and attached Affidavit sworn to by F.B.I. Special Agent Robert M. Buzzard before United States Magistrate Judge Michael R. Merz on November 6, 2003. (Doc. # 1). The Complaint charged Petitioner with one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of using a firearm in connection with the bank robbery in violation of 18 U.S.C. § 924(c). Petitioner was arrested on the warrant the same day. On November 12, 2003, Magistrate Judge Merz found probable cause to believe Petitioner had committed both offenses, bound him over to the grand jury and ordered him held without bond. (Doc. # 8). The grand jury also found probable cause and returned an Indictment on December 10, 2003. (Doc. # 12).

During a subsequent scheduling conference, Judge Rose scheduled a jury trial for

January 26, 2004, with a motions filing deadline of December 31, 2003. (Doc. #14). On January 26, 2004, Assistant Federal Public Defender Cheryll Bennett, who was Petitioner's assigned counsel, made an oral motion on the record and in the presence of Petitioner, seeking a continuance of the trial. (Doc. # 65, Continuance Hrg. Tr., p. 2). In support of the motion, defense counsel stated that a brief delay would permit Petitioner an opportunity to consider the terms of a plea agreement proposed by the government. Petitioner also personally addressed the Court at the hearing, stating that it was his desire to seek the brief continuance with the full knowledge and understanding of his right to a speedy trial. *Id*. Prior to granting the motion, the judge advised Petitioner of his right to a speedy trial, and further advised that the continuance he was seeking would constitute a waiver of that right. Petitioner was initially reluctant to waive any speedy trial, but agreed to a delay until January 30, 2004 so that he could decide if he wanted to enter a plea. (Doc. 65, pp. 3, 5). Petitioner agreed to the delay and the Court rescheduled the matter for a hearing on January 30, 2004, advising Petitioner that at that time, the matter would have to be scheduled for trial "as quickly as possible". (*Id* at p. 5). At the January 30, 2004 hearing, AFPD Bennett announced that Petitioner had rejected the plea offer and would be proceeding to trial. Counsel also requested permission to file a suppression motion, as well as a continuance so that the motion could be fully litigated. (Doc. # 66, Cont. Hrg.Tr., pp. 3-4). Again, the Court addressed the Petitioner and explained his right to a speedy trial. In response, Petitioner stated that he understood those rights, that it was his desire to waive them, and that he was in agreement to the continuance of the trial until

May10, 2004. (*Id*. at 3). During a subsequent suppression hearing, Petitioner's counsel orally withdrew the suppression motion stating that it had been predicated on the erroneous belief that witnesses had made pre-trial identifications of Petitioner from a photospread. (Doc. #67, Supp. Hrg. Tr., pp. 2-3). Counsel indicated that after learning from the government that there had been no such identifications, there was no basis to move forward on the suppression motion. Petitioner indicated that he understood. *Id*. The court granted the motion to withdraw, and trial commenced as scheduled on May 10, 2004.

During trial, the government presented proof of Petitioner's guilt and established the following: on November 6, 2003, Petitioner was the sole armed robber of the National City Bank on Watervliet, Dayton, Ohio. During the robbery, the petitioner had worn a ski mask, a distinctive jacket, gloves, blue jeans and white tennis shoes. After demanding money at gunpoint, Petitioner had filled a cloth bag with approximately $34,000 in cash, fled from the bank on foot, proceeded down an alley adjacent to the bank, and ended up at a bus stop situated directly in front of a tavern he had reportedly had gone to a few minutes prior to the bank robbery. Responding police officers apprehended Petitioner at the bus stop. By the time he was apprehended, Petitioner had changed into a red shirt and was still wearing blue jeans and white tennis shoes. He matched the physical description of the bank robber. A few inches from his feet, police recovered a white plastic bag inside of which was a cloth bag filled with approximately $34,000. The distinctive jacket and ski mask that Petitioner had worn during the robbery were discovered secreted in the alley

4

he had used during his escape, and on his person, police recovered the gloves worn and the handgun he had displayed. On May 19, 2004, the jury returned guilty verdicts on both counts, and Petitioner was subsequently sentenced on August 6, 2004. (Doc. # 37).

Petitioner timely appealed the convictions raising several issues. First, he claimed that the firearms count of the indictment had failed to charge a crime. Second, Petitioner challenged two evidentiary rulings related to the admission of a 911 tape, and evidence of a shoe print that had been recovered from the bank. In his final argument, Petitioner protested the district court's refusal to permit inquiry of the jury after the Court received a letter from an individual advising the court that one of the jurors with whom the individual was acquainted, had relayed to the individual, that he (the juror) had felt pressured into voting for a conviction in the petitioner's case. The appellate court affirmed Petitioner's convictions and denied his subsequent petition for rehearing en banc. (Doc. # 57).

## II. ANALYSIS

### A. Claims that Were or Might have been Asserted on Direct Appeal

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F. 3d 491, 496-497 (6th Cir. 2003). To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the

trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780, 99 S. Ct. 2085 (1979). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States,* 417 U.S. 333, 346, 94 S. Ct. 468 (1974), quoting *Hill v. United States,* 368 U.S. 424, 428-429, 82 S. Ct. 468 (1962). Claims not raised on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process. A motion to vacate under § 2255 is not a substitute for direct appeal. Alleged errors which were raised in the trial court and considered on direct appeal cannot be used as a basis for a motion to vacate under § 2255. *Van Buskirk v United States*, 343 F2d 158 (6th Cir. 1965). Absent manifest injustice, a § 2255 motion will be dismissed summarily if they raise claims that were or might have been asserted on direct appeal. Yackle, POSTCONVICTION REMEDIES, §108 (1981) citing *Mars v. United States,*615 F. 2d 704 (6th Cir. 1980). Each of Petitioner's claims, except for the ineffective assistance of counsel claims, were not raised on direct appeal and are therefore waived. See *United States v. Frady*, 456 U.S. 152 (1982); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim may be brought in a § 2255 even if the issue could have been raised on appeal. *Massaro v. United States,* 538 U.S. 500; 123 S. Ct. 1690 (2003).

A Petitioner must prove two elements to establish ineffective assistance of counsel: the attorney's performance was deficient, and the deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052 (1984). To satisfy the first prong, a defendant must show his counsel made errors so serious he was not functioning as "counsel" guaranteed by the Sixth Amendment. *Id.* With respect to the first prong of the *Strickland* test, the Supreme Court has stated:

> Judicial scrutiny of counsel's performance must be highly deferential. ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

To satisfy the second prong, he must show "that there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### 1. **Petitioner's Ineffective Assistance Claims regarding Failure to Raise Fourth Amendment Issues**

In his first and second arguments, Petitioner asserts that SA Buzzard deliberately submitted false information in the complaint affidavit, and during his testimony to the grand jury, and that counsel was ineffective for failing to raise these issues. First,

Petitioner asserts that the complaint affidavit contained intentional falsehoods that were relied upon by the magistrate judge in finding probable cause. Petitioner further alleges that the grand jury also relied on this false information in deciding to return an indictment. To support these assertions, Petitioner refers to testimony from various trial witnesses which he claims contradicts the false information submitted by Agent Buzzard. Without the false information, Petitioner argues, the complaint affidavit and grand jury testimony are devoid of probable cause and both the complaint and the indictment should have been dismissed. He further asserts that the police had no reasonable suspicion to conduct a Terry stop at the time he was discovered within close proximity to the bank. Nor did they have probable cause to arrest him. Finally, he claims that it was prosecutorial misconduct to elicit false information from the agent during his grand jury testimony.

In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1977), the Supreme Court held that a search warrant is subject to attack where the affidavit in support of it contains false statements which are themselves necessary to the finding of probable cause. This rule also applies to a complaint affidavit. A petitioner is entitled to an evidentiary hearing on the veracity of the affidavit "if and only if, 1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false and 2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." *United States v. Cummins*, 912 F.2d 98, 101 (6th Cir.1990).

Negligence or innocent mistake is insufficient to establish deliberate or reckless disregard for the truth. *Cummins*, 912 F.2d at 101-102. No evidentiary hearing is required where that is all the petitioner can show *Id.* When a *Franks* hearing is granted, the petitioner has the burden of establishing the deliberate or reckless nature of any false statement by a preponderance of the evidence. *Franks* at 156.

To support his claim, Petitioner relies on the fact that there were variations between Agent Buzzard's account of the sequence of events surrounding Petitioner's apprehension and the witness testimony elicited during trial. Petitioner takes issue with the facts surrounding a "trail of clothing" that SA Buzzard stated had been discovered in the alley, as well as the tavern witnesses whom Agent Buzzard indicated had flagged the officers and relayed that the defendant earlier entered the bar to change his clothing. These contentions fail to demonstrate that SA Buzzard's averments were deliberate or recklessly false. The record cited by Petitioner in support of his allegations, demonstrates that at most, during the early stages of the prosecution, SA Buzzard's account of the recovery of the evidence gathered during the investigation immediately following the bank robbery, varied from the actual sequence of events as they occurred. SA Buzzard testified at trial, and was subject to cross-examination on these issues. (Doc. # 46, Trial Tr. Vol. VI, pp. 70-133). Further, the issues were well argued during defense counsel's closing argument. At most, the averments were the result of negligence or innocent mistake.

A review of the affidavit, Agent Buzzard's grand jury testimony, and the trial transcript, establishes that SA Buzzard was among numerous investigators who responded to the scene of the armed bank robbery. He clearly indicated that the information contained in the affidavit was derived from his own investigations as well as from that of other law enforcement officers. Indeed, SA Buzzard had not arrived on the scene until after Petitioner's arrest and had no direct contact with any witnesses. (Doc. # 68, Exh. 4 Grand Jury Tr. pp. 4, 8-9). Numerous officers had performed multiple investigative tasks immediately following the robbery. Upon his arrival on the scene, SA Buzzard quickly gathered a summary of the events from various officers as he was himself conducting other tasks. The evidence adduced at trial established that the events as contained in the affidavit and reported to the Grand Jury had in fact occurred, albeit, not in the exact sequence that SA Buzzard reported. However, any apparent variations that appeared in the complaint affidavit and in Agent Buzzard's grand jury testimony, were the result of communication errors, rather than willful misstatements. There is no showing that SA Buzzard deliberately falsified any information. Consequently, Petitioner can not meet his burden of showing that Agent Buzzard deliberately submitted false information in his affidavit or in his presentment of the case to the grand jury. Because any motion challenging the complaint and indictment could not have overcome the stringent burden imposed by *Franks*, there is no basis to conclude Petitioner suffered any actual prejudice due to his counsel's legal representation.

Petitioner also argues that because of the deficiencies in the complaint affidavit,

the evidentiary items that were recovered pursuant to the arrest warrant should have been suppressed. This argument is without merit because the items were recovered pursuant to Petitioner's initial probable cause arrest which occurred well before the issuance of the federal arrest warrant. (Doc. # 45, Trial Tr. Vol. III, pp. 141-154). The items were not recovered pursuant to the arrest warrant, but rather pursuant to a Terry stop which ultimately led to Petitioner's detention. *Id*. Moreover, the contention that the officers did not have the requisite reasonable suspicion necessary to conduct a Terry stop, is belied by the record.

Petitioner was the sole individual matching the physical description located in the immediate vicinity of the bank, within minutes of the bank robbery. *Id*. The responding police officers had received repeated updates via radio broadcasts as more information was being gathered from witnesses at the scene. The final broadcast prior to the petitioner's arrest, described the suspected armed bank robber to be wearing a red shirt. Just after the broadcast, the arresting officer observed the defendant, seated at the bus stop, within minutes of the armed bank robbery and in its immediate vicinity, wearing a red shirt. At that point, those facts clearly supported the requisite reasonable suspicion needed for a Terry stop, and were arguably sufficient for a probable cause arrest.

The probable cause finding was further supported by the events that transpired after the officers approached Petitioner. Upon their approach, the officers ordered him to show his hands. When he failed to comply with the order, officers moved in to secure Petitioner, who at that point, informed them that he was armed. Officers subsequently

recovered a firearm from his waistband. Any questions regarding probable cause was conclusively established by these additional facts. The subsequent discovery of the plastic bag containing the exact amount of currency that was stolen moments before from the bank only bolsters the "objectively reasonable police officer[s']." determination of probable cause. *Ornelas v. United States*, 517 U.S. at 696, 116 S.Ct. 1657.

### 2. Counsel's Withdrawal of the Suppression Motion

As the record reflects, a suppression motion filed by defense counsel was premised on the assumption that there had been a pretrial photographic identification of Petitioner. As that was the not the case, the motion was properly withdrawn, and Petitioner suffered no prejudice. (Doc. # 68, Exh. 5 Defense Counsel's Affidavit)

### 3. Stipluation to FDIC Element

Petitioner asserts that his counsel improperly stipulated to the FDIC element required for the armed bank robbery conviction thereby waiving its submission for consideration by the jury. This contention lacks merit.The stipulation of FDIC was read onto the record during trial and submitted to the jury as one of the elements the government was required to prove beyond a reasonable doubt in order to sustain a guilty verdict. (Doc. # 53, Trial Tr. Vol. VI, p. 212). Moreover, if the defendant had refused to stipulate, the government would have simply presented evidence of the same during trial. Thus, Petitioner suffered no prejudice as a result of the stipulation.

### 4. Speedy Trial

Petitioner further claims that his rights to a speedy trial were violated when the district court granted his second motion for a continuance in order to pursue the motion for suppression of evidence. He claims a violation occurred when the court failed to make an "ends of justice" finding on the record. Because he did not raise this issue on appeal, he has procedurally defaulted this claim. But even if he had raised it, he would not have prevailed as the Supreme Court's decision holding that "subsection (h)(8)(A) of the Speedy Trial Act require[s] that [district courts] make express findings on the record about the ends-of-justice balance," was not decided until June 5, 2006-nearly two years after Petitioner's conviction. *Zedner v. United States*, 547 U.S. 489 ( 2006). Case law at that time gave no indication that any such on-the-record finding was required, especially when the defense itself requests the continuance.

### 5. 28 U.S.C. § 1691

Finally, Petitioner seeks relief for a violation of 28 U.S.C. § 1691 which he states required the court clerk's signature on the complaint and affidavit. Again, because he did not raise this issue on appeal, he has procedurally defaulted this claim. Moreover, the complaint and affidavit were in compliance with the requirements of Rules 3 and 4 of the Federal Rules of Criminal Procedure which make no mention of the requirement for a court seal. Therefore, no prejudice can be demonstrated.

Each of Petitioner's claims are without merit. Petitioner's § 2255 petition is therefore not well taken and should be denied with prejudice. Reasonable jurists would

not disagree with the foregoing analysis. Thus, Petitioner should also be denied both a certificate of appealibility and leave to proceed *in forma pauperis*.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Lawrence W. Llyod's Petition to Vacate Sentence (Doc. # 60) be DENIED and DISMISSED with prejudice;

2.  A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

3.  The case be terminated on the docket of this Court.


June 3, 2009

                                                           s/ Sharon L. Ovington
                                                             Sharon L. Ovington
                                                     United States Magistrate Judge


**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten

days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).